363 S.E.2d 238

Michael J. **MOCZEK**

v.

W. **BECHTOLD, Commissioner,
Dept. of Motor Vehicles.**

No. 17554.

Supreme Court of Appeals of
West Virginia.

Oct. 21, 1987.

Frank Cuomo, Jr., Wellsburg, for Moczek.

Scott A. Ash, Asst. Atty. Gen., for Bechtold.

NEELY, Justice:

The appellant, Michael Moczek, was arrested on 25 May 1985, by State Trooper C. White, for driving under the influence of alcohol. Trooper White had observed Mr. Moczek's car weaving back and forth, and after stopping Mr. Moczek, Trooper White noticed that the appellant had glassy eyes, slurred speech and difficulty walking. After Trooper White advised appellant of the

West Virginia implied consent law, and after appellant stated that he understood the penalties for failure to take the designated breathalyzer test, appellant refused to submit to the breath test on three consecutive occasions.

At his initial appearance before a magistrate, appellant demanded a blood test, but refused to pay for the test, arguing that he could not afford it. Trooper White did not offer to pay for the test and did not allow the blood test to be administered at the county's expense. Thereafter, Mr. Moczek's driver's license was suspended for one year by the Commissioner of Motor Vehicles under the authority of *W. Va. Code*, 17C–5–7(a) [1983], which states:

"For the first refusal to submit to the designated secondary chemical test, the commissioner shall make and enter an order revoking such person's license to operate a motor vehicle in this State for a period of one year."

Because of this administrative revocation, Mr. Moczek appealed to the Circuit Court of Ohio County which upheld the license suspension. Mr. Moczek now appeals that circuit court decision on the grounds that he should have been accorded the opportunity to take a blood test as an alternative to the breathalyzer test *and* that he was denied the right to take such a blood test because he did not have money to pay for it.

I

Appellant argues that according to *W. Va. Code*, 17C–5–9 [1983][1] a person arrested for driving under the influence of alcohol has the right to ask for a blood test to be taken within the two hours following the time of his arrest. The conditions in which the blood test will be administered are set forth in *W. Va. Code*, 17C–5–6 [1981]. However, *W. Va. Code*, 17C–5–5 [1983] designates the *breathalyzer* test as the test that *shall* be administered initially

to determine the driver's level of intoxication for purposes of establishing preliminary probable cause and *W. Va. Code*, 17C–5–4 [1983] allows each law enforcement agency to designate a breath, urine, or blood test to be taken to measure the alcohol level after probable cause is established. In appellant's case the secondary test designated by the state police was a breathalyzer, and appellant's erratic driving, glassy eyes and slurred speech provided probable cause even without the *initial* breathalyzer. *W. Va. Code*, 17C–5A–1 [1983] states that "any person who drives a motor vehicle in this State shall be deemed to have given his consent" to the test designated by the law. And, above all, *W. Va. Code*, 17C–5–7 [1983] clearly provides:

"If any person under arrest refuses to submit to any secondary chemical test, the test shall not be given: Provided, that prior to such refusal, the person is given a written statement advising him that his refusal will result in the revocation of his license to operate a motor vehicle in this State for a period of at least one year and up to life."

■ Therefore, it is clear that even though Mr. Moczek had a right to a blood test in addition to the secondary chemical test designated by the state police under *W. Va. Code*, 17C–5–4 [1983], in this case the breathalyzer, the fact that he refused to take the designated breathalyzer automatically subjected him to administrative suspension of his driver's license. The Circuit Court of Ohio County correctly held that due to Mr. Moczek's refusal to take the breathalyzer, this is a case of administrative suspension, and that because enough proof of Mr. Moczek's refusal was provided, his driver's license was properly suspended. In a parallel case, *Jordan v. Roberts*, 161 W.Va. 750, 246 S.E.2d 259 (1978), this Court held that proof of refusal to take the designated chemical test is enough to warrant suspension, and we also upheld the

1. *W. Va. Code*, 17C–5–9 [1983] provides:
"Any person lawfully arrested for driving a motor vehicle in this State while under the influence of alcohol, controlled substances or drugs shall have the right to demand that a sample or specimen of his blood, breath or

urine be taken within two hours from and after the time of arrest, and that a chemical test thereof be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand."

constitutionality of the implied consent statute.[2]

■ Also, in *State v. York*, 175 W.Va. 740, 338 S.E.2d 219, 221 (1985), this Court stated:

"*W.Va.Code*, 17C–5–9 [1983] clearly does not require blood tests. Under the *Code* law enforcement officers are under no duty to inform the defendant of his right to additional tests. Rather, *W.Va.Code*, 17C–5–9 [1983] accords an individual arrested for driving under the influence of alcohol ... a right to demand and receive a blood test within two hours of his arrest."

Thus, *W.Va.Code*, 17C–5–9 [1983] does not require that an alternative test be offered; it merely accords an *additional* right to individuals to have another test to supplement the designated secondary test if that designated secondary test is either a breath or urine test. It is clear now that a person who refuses to take the designated breathalyzer or urine test will have his license revoked, even if he takes an alternative blood test that conclusively proves that he was not intoxicated.

### II

Appellant asserts that because many people do not have enough money to pay for a blood test the county should pay for it. *W.Va.Code*, 17C–5–10 [1983] provides:

"A reasonable fee shall be allowed to the person withdrawing a blood sample or administering a urine test at the request and direction of a law enforcement officer in accordance with the provisions of this article. If the person whose blood sample was withdrawn or whose urine was tested was arrested and charged with a violation of section two [§ 17C–5–2] of this article, the county having venue of such charge shall pay said fee, and if said person is subsequently convicted of such charge, such fee shall be taxed as part of the costs of the criminal proceeding and shall be paid ... into the general fund of said county."

In Mr. Moczek's case, the Circuit Court held that the results of the blood test would have been irrelevant to the outcome of the narrow issue of whether Mr. Moczek's license should be suspended because appellant's refusal to take the designated breathalyzer test immediately after his arrest made the present case one of administrative revocation. Mr. Moczek's driver's license was suspended because he refused to take the breathalyzer test, and not because he was driving while under the influence of alcohol. In this regard we affirm the holding of the lower court. However, Mr. Moczek's appeal raises an equal protection question that we should answer. Mr. Moczek is correct when he asserts that if a person has a right to demand a blood test under *W.Va.Code*, 17C–5–9 [1983], but cannot pay for it, the right is meaningless.

### III

The right to non-discrimination on the basis of wealth in the criminal justice process was eloquently recognized by the U.S. Supreme Court in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), where the court stated that "reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him," and decided that the state should pay for a lawyer in serious cases if a defendant is indigent. We have also recognized the right to non-discrimination on the basis of wealth in *Kolvek v. Napple*, 158 W.Va. 568, 212 S.E.2d 614 (1975) where we held that it is a denial of equal protection for an indigent to be incarcerated because he cannot furnish a $500 cash bond or a proper surety in a "peace bond" proceeding.

■ Thus, federal and State law agree that all costs related to proceedings in a

---

2. *W.Va.Code* 17C–5–4 [1983] provides:
"Where the request is made to take the ultimately designated test under the implied consent law and the licensee by his conduct or words manifests a reluctance to take the test or qualifies his assent to take the test on factors that are extraneous to the procedures surrounding the test, proof of refusal is sufficiently established."

case should be paid by the county if the petitioner is unable to pay. In this light, we hold that *W. Va. Code*, 17C–5–10 [1983] does not impliedly require that a suspect facing a charge of driving under the influence of alcohol or other intoxicants pay for his blood test at the time it is administered even though the test is not administered "at the request and direction of a law enforcement officer," but rather at the request and direction of the suspect. It is more than likely that the suspect will not be carrying sufficient money to pay for the test, and the logic of equal protection seems to demand that the county pay for the blood test initially. Then, of course, if the suspect is found guilty, the blood test fee should be taxed as costs. This interpretation of *W. Va. Code*, 17C–5–10 [1983] is in accordance with the equal protection reasoning of the U.S. Supreme Court in *Gideon v. Wainwright*,[3] *supra*. Mr. Moczek was unable to afford a blood test at the moment when he required it and, therefore, he was temporarily an indigent; following our reasoning, he should not have suffered discrimination on the grounds of his temporary indigency.

The equal protection arguments presented by this case are discussed here to establish guidelines for similar cases in West Virginia in the future, although the failure of Trooper White to pay for appellant's blood test has no bearing on the outcome of this specific case.

The judgment of the Circuit Court of Ohio County is affirmed.

Affirmed.

---

**3.** Equal protection arguments flowing from *Gideon v. Wainwright* have been accepted by this Court on numerous occasions. Thus, we ruled that due process and equal protection require that an indigent defendant be appointed counsel in *Dobbs v. Wallace*, 157 W.Va. 405, 201 S.E.2d 914 (1973); *Bullett v. Staggs*, 162 W.Va. 199, 250 S.E.2d 38 (1978); and *State ex rel. May v. Boles*, 149 W.Va. 155, 139 S.E.2d 177 (1964). Furthermore, in *State ex rel. Graves v. Daugherty*, 164 W.Va. 726, 266 S.E.2d 142 (1980), we ruled that "indigent paternity defendants, who move the court to order blood-grouping tests, are entitled to have the expense borne by the State."