423 S.E.2d 619

**David CHAPMAN Plaintiff Below, Appellee,**

v.

**The WEST VIRGINIA DEPARTMENT OF MOTOR VEHICLES, Defendant Below, Appellant.**

**No. 20521.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1992.

Decided Oct. 23, 1992.

Mario Palumbo and Paul E. Jordan, Office of the Atty. Gen., Charleston, for appellant.

James W. St. Clair, St. Clair and Levine, Huntington, for appellee.

PER CURIAM:

This case involves an appeal by the West Virginia Department of Motor Vehicles (DMV) from a final order entered by the Circuit Court of Putnam County on March 5, 1990. The order reversed a ten-year suspension of the appellee, David Chapman's driver's license, by the DMV for driving under the influence of alcohol, sec-

ond offense. The DMV contends that the trial court erred in reversing the suspension order because the appellee admittedly refused to submit to a breathalyzer examination subsequent to his arrest for driving under the influence of alcohol, second offense. We agree with the contentions of the DMV.

During the early morning of January 10, 1988, Putnam County Deputy Sheriff J.D. Janey arrested the appellee for driving under the influence of alcohol. Deputy Janey had observed the appellee's vehicle weaving back and forth into the opposite lane of traffic, and almost striking a guardrail. After stopping the appellee's vehicle, Deputy Janey noticed a strong odor of alcohol upon the driver, the appellee. Deputy Janey asked the appellee to exit the vehicle and perform field sobriety tests. Thereafter, the appellee exhibited a lack of balance and was unable to perform the "finger-to-nose" test. Deputy Janey then arrested the appellee for driving under the influence of alcohol.

After arresting the appellee, Deputy Janey transported him to the Putnam County Sheriff's Office in Winfield. The appellee was requested to undergo a breathalyzer test to determine the alcoholic content of the appellee's blood. The appellee refused to undergo the test. Deputy Janey read an "implied consent" form to the appellee explaining the penalties for refusing to undergo a designated secondary chemical test when one has been arrested for driving under the influence of alcohol. Deputy Janey again asked the appellee to undergo the test fifteen minutes later, and the appellee again refused.

As a result of the appellee's refusal to undergo a breathalyzer test, Deputy Janey completed an "Arresting Officer's Implied Consent Statement," and forwarded it to the Commissioner of Motor Vehicles.[1] The statement noted that (1) Deputy Janey had reasonable grounds to believe that the appellee had been driving under the influence of alcohol; (2) that the Putnam County Sheriff's Department had designated that a breathalyzer test be administered incidental to a lawful arrest; (3) that the appellee was given written notice that his driver's license would be revoked for a period of at least one year if he refused to undergo the breathalyzer test; and (4) the appellee refused to undergo the breathalyzer test.

In response to receiving Deputy Janey's statement, the DMV revoked the appellee's driver's license for a period of ten years. The revocation order noted that the appellee's driver's license had been suspended on one prior occasion for driving under the influence of alcohol (the prior suspension had occurred on April 15, 1987). The appellee timely requested a hearing to protest the revocation.

---

1. The "Arresting Officer's Implied Consent Statement" is a form created to comply with *W. Va. Code,* 17C–5–7(a) [1986] which requires that a statement be submitted to the Commissioner of the DMV when a person arrested for driving under the influence of alcohol refuses to undergo a designated secondary chemical test. *W. Va. Code,* 17C–5–7(a) [1986] states, in pertinent part:

> If a person initially refuses to submit to the designated secondary chemical test after being informed in writing of the consequences of such refusal, he shall be informed orally and in writing that after fifteen minutes said refusal shall be deemed to be final and the arresting officer shall after said period of time expires have no further duty to provide the person with an opportunity to take the secondary test. The officer shall within forty-eight hours of such refusal, sign and submit to the commissioner of motor vehicles a written statement of the officer that (1) he had reasonable grounds to believe such person had been driving a motor vehicle in this state

while under the influence of alcohol, controlled substances or drugs; (2) such person was lawfully placed under arrest for an offense relating to driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs; (3) such person refused to submit to the secondary chemical test finally designated in the manner provided in section four [§ 17C–5–4] of this article; and (4) such person was given a written statement advising him that his license to operate a motor vehicle in this state would be revoked for a period of at least one year and up to life if he refused to submit to the secondary test finally designated in the manner provided in section four [§ 17C–5–4] of this article.

> . . . .

> Upon receiving the statement the commissioner shall make and enter an order revoking such person's license to operate a motor vehicle in this state for the period prescribed by this section.

At the hearing held on March 7, 1988, the appellee admitted that he had refused to undergo the breathalyzer examination requested by Deputy Janey. He suggested that he was willing to undergo a blood test upon his arrest, but that Deputy Janey informed him that he had only fifteen minutes in which to secure such a test, and that it would cost him $200.00.

By final order dated June 1, 1988, the Commissioner of the DMV upheld the ten-year revocation of the appellee's driver's license. The appellee acknowledges in his brief before this Court that "[t]here is no doubt that [the appellee] did, shortly after June 1, 1988, receive a copy of the 'FINAL ORDER' which revoked his right to drive for ten years[.]" Thirteen months later, on July 24, 1989, the appellee appealed the revocation to the Circuit Court of Putnam County.

In his appeal to the trial court, the appellee acknowledged that his petition was filed more than thirty days after receipt of the final order of revocation. He also acknowledged that *W. Va. Code*, 29A–5–4(b) [1964], requires that an appeal from the final order of the Department of Motor Vehicles be filed within thirty days of the receipt of the final order. Appellee argued that the final order did not notify the appellee of his right to appeal, and therefore the thirty-day time period should not apply. The appellee also argued that because he had been willing to undergo a blood test, the fact that he had refused to undergo the breathalyzer examination should not constitute a violation of *W. Va. Code*, 17C–5–7 [1986], which states, *inter alia*, that a refusal to undergo a designated secondary test upon arrest for driving under the influence of alcohol shall result in the revocation of the refuser's driver's license for a period of at least one year.[2]

By order entered March 5, 1990, the trial court reversed the final order of the DMV and reinstated the appellee's driver's license. The trial court cited neither reasons nor law in its reinstatement order. An appeal to this Court followed.

The DMV contends that the trial court committed reversible error when it reversed the final order of the Department. In *Gino's Pizza of West Hamlin v. WVHRC*, 187 W.Va. 312, 418 S.E.2d 758 (1992), we noted when a circuit court may reverse an agency decision governed by the West Virginia Administrative Procedure Act. Contested decisions of the DMV are governed by the Act. *See W. Va. Code*, 29A–1–1, *et seq.* and 17C–5A–2 [1992]. In syllabus point 3 of *Gino's*, we stated:

'Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, article 5, section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." ' Syl. pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

For the reasons that follow, we find that the trial court exceeded its authority to reverse a final order of the DMV under *W. Va. Code*, 29A–5–4(g) [1964] when it reinstated the appellee's driver's license.

I

In this case the appellee readily admits that he refused to undergo a breathalyzer test as requested by the arresting officer. The appellee contends that the conduct of

---

**2.** In this case the enhancement provisions of *W. Va. Code*, 17C–5–7 [1986] were utilized because the appellee had previously received an administrative suspension of his driver's license

for driving under the influence of alcohol in 1987. *See infra*, part II. Therefore, the appellee's license to drive was suspended for ten years.

Deputy Janey, by informing the appellee that the appellee could obtain a blood test elsewhere, somehow vitiates his refusal to undergo the breathalyzer test. We must disagree.

■ *W. Va. Code,* 17C–5–7(a) [1986] states, *inter alia,* that the Commissioner of the DMV, upon receiving the statement of an arresting officer to the effect that a driver has been arrested, upon reasonable grounds, for driving under the influence of alcohol, and also stating that the driver refused to undergo a designated secondary chemical test despite being informed, both orally and in writing, of the consequences, shall revoke the driver's license to drive. *See supra* n. 1. An argument similar to that of the appellee in this case was previously advanced and rejected by this Court in *Moczek v. Bechtold,* 178 W.Va. 553, 363 S.E.2d 238 (1987). In syllabus point 2 of *Moczek* we stated: "A person's driver's license may be suspended under *W. Va. Code,* 17C–5–7(a) [1983] for refusal to take a designated breathalyzer test." [3] It is clear from syllabus point 2 of *Moczek* that the Department did not err in any way in

finding that the appellee had violated *W. Va. Code,* 17C–5–7 [1986].

## II

■ The appellee asserts that even if he has violated *W. Va. Code,* 17C–5–7 [1986], a ten-year suspension of his driver's license was unwarranted.[4] We disagree. The Department utilized the enhancement provisions of the section in suspending the appellee's driver's license for ten years. That provision states, in pertinent part:

If the commissioner has previously revoked the person's license under the provisions of this section, the commissioner shall, for the refusal to submit to the designated secondary chemical test, make and enter an order revoking such person's license to operate a motor vehicle in this state for a period of ten years[.]

*W. Va. Code,* 17C–5–7 [1986], in part. The Department noted in its final order that the appellee had previously received a driver's license revocation for violating *W. Va. Code,* 17C–5–2 in 1986.

The appellee asserts that a driver's license revocation for violating *W. Va. Code,*

---

**3.** As in this case, the defendant driver in *Moczek* refused to undergo a breathalyzer test upon his arrest for driving under the influence of alcohol. Instead, he sought a blood test. We stated that:

[I]t is clear that even though Mr. Moczek had a right to a blood test in addition to the secondary chemical test designated by the state police under *W. Va. Code,* 17C–5–4 [1983], in this case the breathalyzer, the fact that he refused to take the designated breathalyzer automatically subjected him to administrative suspension of his driver's license.

178 W.Va. at 554, 363 S.E.2d at 239.

It should be noted that *Moczek* was decided under the 1983 version of *W. Va. Code,* 17C–5–7. The 1986 version of the section, under which the instant case is governed, is not substantially different from the 1983 section for the purposes of this case.

**4.** The appellee also asserts that the breathalyzer test sought to be employed by Deputy Janey was invalid because the breathalyzer machine was made by a company other than the one listed by the Putnam County Sheriff's Office on a form filed with the Department in 1981. The appellee asserts that because the machine was made by a different company, it did not constitute a "*designated* chemical test," as referred to in *W. Va. Code,* 17C–5–7 [1986]. This issue was not raised before the trial court. However, we re-

cently addressed a similar argument in *Mitchell v. Cline,* 186 W.Va. 332, 335, 412 S.E.2d 733, 736 (1991), wherein we stated:

Given the fact that particular test technology is rapidly developing, and the further fact that the problem of intoxicated drivers is a relatively static one, this Court cannot believe that it was the intent of the Legislature to impose particular test or machine restrictions on law enforcement officers in the enforcement of the drunk-driving laws. It was not the intent of the Legislature to afford drunk drivers with technical loopholes to afford them a method of escaping the effect of the laws. Rather, the Court believes that it was the purpose of the Legislature to afford police officers an objective, scientific, and rational basis for distinguishing intoxicated from non-intoxicated drivers, and the Legislature contemplated that that objective could be accomplished by any number of scientifically-accepted blood, breath, or urine tests. The key factor is not whether the particular test is designated, but whether a scientifically established test involving breath, blood, or urine is designated and employed.

(citation omitted). There is nothing in the record to suggest, nor does the appellee assert, that the fact that the breathalyzer machine was manufactured by a company other than the one listed on the form somehow violates the "scientifically established test" criteria.

17C–5–2 [1986] is not covered under the enhancement provisions of *W.Va.Code,* 17C–5–7 [1986]. Such a position is clearly erroneous, as a simple reading of *W.Va. Code,* 17C–5–7 [1986] shows. *W.Va.Code,* 17C–5–7(b) [1986] states, in pertinent part:

(b) For the purposes of this section, where reference is made to previous suspensions or revocations under this section, the following types of suspensions or revocations shall also be regarded as suspensions or revocations under this section:

(2) Any revocation under the provisions of section one or two [§ 17C–5A–1 or § 17C–5A–2], article five-a of this chapter,[5] for conduct which occurred on or after June tenth, one thousand nine hundred eighty-three.

For the foregoing reasons, the March 5, 1990 final order of the Circuit Court of Putnam County is reversed, and this case is remanded for reinstatement of the final order of the Department of Motor Vehicles.

Reversed and remanded.

**5.** *W.Va.Code,* 17C–5A–2 [1986], mandates that the Commissioner of the DMV must revoke the driver's license of one who has been found, by a preponderance of the evidence, to have driven a motor vehicle under the influence of alcohol.

*See W.Va.Code,* 17C–5A–2(i). This administrative sanction was invoked against the appellee in his prior driver's license suspension in 1987 when he violated *W.Va.Code,* 17C–5–2.