IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

_____

No. 13-1225

_____

FILED

**October 30, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STEVEN O. DALE, ACTING COMMISSIONER OF THE
WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Respondent Below, Petitioner

v.

CHRISTINA PAINTER,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Putnam County
The Honorable Joseph K. Reeder, Judge
Civil Action No. 12-AA-3

REVERSED AND REMANDED

_____

Submitted: October 1, 2014
Filed: October 30, 2014

Patrick Morrisey, Esq.
Attorney General
Janet E. James, Esq.
Senior Assistant Attorney General
Charleston, West Virginia
Counsel for the Petitioner

David Moye, Esq.
Winfield, West Virginia
Counsel for the Respondent

JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

2.      "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

3.      When a driver asserts that his or her right to a blood test requested pursuant to W. Va. Code § 17C-5-9 (1983) has been violated, the burden of proof is upon the driver to show he or she made the request in compliance with the conditions set forth in the statute for making that request.

4.      "A statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

5.    "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syl. pt. 5, *State v. Snyder*, 64 W. Va. 659, 63 S.E. 385 (1908).

6.    "'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. pt. 4, *Cmty. Antenna Serv., Inc. v. Charter Commc'ns VI, LLC*, 227 W. Va. 595, 712 S.E.2d 504 (2011).

7.    "'Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent.'" Syl. pt. 6, in part, *Cmty. Antenna Serv., Inc. v. Charter Commc'ns VI, LLC*, 227 W. Va. 595, 712 S.E.2d 504 (2011) (quoting *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975)).

8.     A request for a blood test made pursuant to W. Va. Code § 17C-5-9 (1983) must be made to the investigating officer or officers.

Benjamin, Justice:

The petitioner, Steven O. Dale, Commissioner of the West Virginia Division of Motor Vehicles ("Commissioner"), revoked respondent Christina Painter's driver's license on September 9, 2010, for the offense of driving under the influence of alcohol with a blood alcohol concentration ("BAC") of 0.15 percent or more. Following an administrative hearing on December 6, 2011, before the Office of Administrative Hearings ("OAH"), the chief hearing examiner entered an order on April 27, 2012, affirming the Commissioner's order of revocation. Ms. Painter appealed to the Circuit Court of Putnam County which, by order entered on October 28, 2013, reversed the OAH's order. The Commissioner now appeals to this Court, arguing that the circuit court erred in reversing the revocation order of the OAH. Having conducted a thorough review of this case, we find that the circuit court did commit reversible error, and we therefore reverse and remand the circuit court's October 28, 2013, order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 21, 2010, Officer J.J. Garbin of the Nitro Police Department arrested Ms. Painter for driving under the influence of alcohol. The Commissioner revoked Ms. Painter's driver's license on September 9, 2010. Ms. Painter requested a hearing before the OAH to contest the revocation. The hearing took place on December 6, 2011. Only Officer Garbin and Ms. Painter testified.

1

Officer Garbin testified that he initiated a traffic stop of Ms. Painter's vehicle at 12:07 a.m. on August 21, 2010, because she was traveling 41 mph in a 25 mph zone. Officer Garbin observed that Ms. Painter was unsteady as she exited the vehicle and walked to the roadside, but that she was normal while standing. He smelled the odor of alcohol coming from Ms. Painter's vehicle, described her speech as slow, and stated that her eyes were glassy. He testified that Ms. Painter denied having consumed any alcohol that evening.

Officer Garbin administered three field sobriety tests: the horizontal gaze nystagmus test, the walk and turn test, and the one leg stand test. Ms. Painter failed all three tests. Officer Garbin administered a preliminary breath test,[1] and then at 12:15 a.m., he placed Ms. Painter under arrest for driving under the influence of alcohol.

Ms. Painter testified that while Officer Garbin transported her to the Nitro Police Department for processing, she made a phone call to her daughter:

> A [Ms. Painter]    . . . I asked to call my daughter from the squad car because my daughter was home alone. I called my daughter that's in law school and told her what was going on. I said I did not want to alarm her, but I wanted to let her know what was going on. I don't remember where I was going with that. Oh, he overheard my conversation with my daughter, and she said, "Well, Mom, you don't sound like

---

[1] During the administrative hearing, the hearing examiner sustained Ms. Painter's objection to the introduction of the preliminary breath test results.

you've been drinking," and I said, "It could be something to do with that surgery. I remember they warned me about that."[2]

So he was well aware that I had the surgery. And then I told my daughter I'm going to have to get a blood test.

Q [Commissioner's counsel][3] ***Did you tell the officer there himself?***

A ***No, not this officer.***

Q Did you ever tell them?

A At Western Regional I told them. I asked him if he heard my conversation, and he didn't offer me one.

(Footnotes and emphasis added.)

Upon arriving at the police department, Officer Garbin administered a second breath test at approximately 12:55 a.m. That test showed that Ms. Painter's BAC was 0.164%. Ms. Painter was then transferred to the Western Regional Jail. Ms. Painter claims that she made a request for a blood test at the jail.

---

[2] At the administrative hearing, Ms. Painter testified that she had previously undergone gastric bypass surgery. She admitted to drinking a glass of wine and one Budweiser beer on the night of her arrest. She claimed that she was instructed not to drink carbonated beverages after having her gastric bypass surgery "[b]ecause you will throw up and you'll have acid reflux." Ms. Painter testified, "We were warned in a seminar that not only should we not drink anything carbonated, but one beer could appear on a breathalyzer over the legal limit." Ms. Painter stated that she vomited just prior to being stopped by Officer Garbin and that at the police station, she "didn't throw up, but it embarrassed [her], the belching." At the administrative hearing, Ms. Painter did not call an expert witness, nor did she present any evidence other than her testimony to support her claim that the gastric bypass surgery affected her breath test results.

[3] During the administrative proceedings, the Commissioner was represented by Eric L. Hayes, Esq.

Q [Ms. Painter's counsel][4] Christina, [y]ou discussed earlier that you had asked for a blood test and that you had actually specifically asked for a blood test at Western Regional. Can you talk about that for me, please?

A [Ms. Painter]    Well, they already put me in a cell, and somebody was walking by, a guard or somebody. I don't know what [h]is position or rank was, but I said, "Please have someone give me a blood test." I said, "That's the only way you're going to know," but I never heard anything from anybody. I don't even know if they reported my request.

Q    How long had you been at the jail when that happened? Was that right when you arrived or after hours?

A    No, it wasn't right when I arrived. I was kind of scared. I didn't really want to say anything, you know, and then finally, you know, I had better say something here, and it was shortly after I arrived.

(Footnote added.)

The chief hearing examiner of the OAH entered an order on April 27, 2012, affirming the Commissioner's order of revocation. The OAH's order concluded that the Commissioner had proved by a preponderance of the evidence that Ms. Painter "drove, exhibited symptoms of intoxication, and consumed alcohol" so as to warrant the administrative revocation of her driver's license for driving under the influence of alcohol. The order further stated:

> Additionally, even though [Ms. Painter] requested a blood test and was never given one, both the totality of the evidence and the fact that the secondary chemical test results

---

[4] During the administrative proceedings, Ms. Painter was represented by David Pence, Esq.

4

were not borderline dictate that [Ms. Painter] drove with a blood alcohol concentration of fifteen hundredths of one percent, or more, by weight. It is acknowledged that in accordance with West Virginia [C]ode §17C-5-9 and *Moczek v. Bechtold*, 178 W. Va. 553, 363 S.E.2d 238, 1987 W. Va. LEXIS 681 (1987), [Ms. Painter] has the right to a blood test after having submitted to a designated secondary chemical test of her breath. In sum, the evidence presented by the Respondent was not negated by the Investigating Officer's failure to afford [Ms. Painter] a blood test.

Ms. Painter appealed the order of the OAH to the circuit court.[5] The circuit court held a hearing on the matter on July 10, 2013, and entered its order on October 28, 2013, granting the petition for appeal and reversing the revocation ordered by the OAH. The circuit court found that "[t]he Chief Hearing Examiner specifically made a finding that Ms. Painter requested a blood test in accordance with W. Va. Code § 17C-5-9 and

---

[5] On November 29, 2012, the circuit court certified the following question to this Court:

> In a driver's license suspension hearing before the Department of Motor Vehicles what is the remedy if an individual is denied his or her constitutional and statutory right to a third blood test [sic] pursuant to West Virginia Code § 17C-5-9?

The circuit court answered the question as follows:

> If one requests a blood test in accordance with and pursuant to W. Va. Code § 17C-5-9, and that request is denied, the appropriate remedy is exclusion of results from tests administered by or at the direction of law enforcement.

This Court declined to consider the question.

that Ms. Painter was not afforded this statutory right." In support, the circuit court noted, "In light of the record made before the Chief Hearing Examiner, it is plausible—in fact, it is uncontroverted—that the petitioner requested a blood test." The circuit court continued:

> The record indicates that Ms. Painter requested a blood test twice. The first request was made to the Investigating Officer and the second request was made to someone at Western Regional Jail. The Chief Hearing Examiner, however, only made a specific finding as to the request made to the Investigating Officer. Consequently, the [c]ourt will limit its review specifically to this finding.

In conclusion, the circuit court stated:

> The [c]ourt **FINDS** that [Ms. Painter's] constitutional and statutory rights have been violated. To deny these rights prevents one from obtaining evidence necessary for their defense and hinders the truth finding function of a judicial proceeding. Also, such an interpretation eviscerates a statutory right granted by the West Virginia Legislature.
> If an individual is given a constitutional and statutory right, and said right is violated, there must be some relief for this violation. In the case at bar, the appropriate relief can be found in W. Va. Code § 29A-5-4(g)(1).[6] That code section

---

[6] The circuit court's standard of review of administrative proceedings is set out in W. Va. Code § 29A-5-4(g):

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
> (1) In violation of constitutional or statutory provisions; or

(continued . . .)

provides that if an administrative agency's decision violates an individual's constitutional or statutory rights a reviewing court ***shall*** reverse, vacate, or modify the order. In the case at bar, the [c]ourt **REVERSES and VACATES** the Chief Hearing Examiner's decisions because its application of the law to the facts and its conclusions of law violate [Ms. Painter's] constitutional and statutory rights.

(Footnote added.)

The Commissioner now appeals the circuit court's October 28, 2013, order.

## II.  STANDARD OF REVIEW

Our standard of review in appeals dealing with driver's license revocation proceedings is well established:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

---

(2) In excess of the statutory authority or jurisdiction of the agency; or
    (3) Made upon unlawful procedures; or
    (4) Affected by other error of law; or
    (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
    (6) Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.

7

Syl. pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. pt. 2, *id.*

## III.  ANALYSIS

On appeal, the Commissioner asserts that the circuit court erroneously found as fact that Ms. Painter requested a blood test in accordance with W. Va. Code § 17C-5-9 (1983)[7] and was not provided with one. The Commissioner contends that the circuit court's finding was not supported by reliable, probative, and substantial evidence on the whole record. The Commissioner further argues that because the circuit court's factual findings are flawed, the court's conclusion of law that Ms. Painter's right to a blood test was violated constitutes reversible error. In her summary response brief, Ms. Painter argues that the circuit court did not err in finding that Ms. Painter requested a blood test, that the request was denied, and that her right to a blood test was violated.

---

[7] The 1983 version of this statute was in force at the time of Ms. Painter's arrest. In 2013, the Legislature amended the statute. Neither party alleges, and this Court does not find, that the changes made to the statute in 2013 are probative to the issues in this case; the changes do not affect our analysis herein.

8

W. Va. Code § 17C-5-9 (1983) provides drivers arrested for driving under the influence of alcohol the right to a blood test. That statute states:

> Any person lawfully arrested for driving a motor vehicle in this State while under the influence of alcohol, controlled substances or drugs shall have the right to demand that a sample or specimen of his blood, breath or urine be taken within two hours from and after the time of arrest, and that a chemical test thereof be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand.

W. Va. Code § 17C-5-9.

We begin by acknowledging that W. Va. Code § 17C-5-9 provides a driver with a statutory right to a blood test when that driver has properly invoked that right. The right is not without condition; the request must be asserted in the method prescribed by the statute. If it is not, then the failure to provide the requested blood test does not constitute a violation of the driver's right to a blood test.

In this case, Ms. Painter argues that she requested a blood test as per the method described in W. Va. Code § 17C-5-9, and that her right to said blood test was violated when she was not provided with the same. This Court has held that "[a] fairly accurate, though not an infallible, test for locating the burden of proof is which party to an action or suit will fail if he offers no evidence competent to show the fact averred as the basis for the relief he seeks to obtain." Syl. pt. 4, *DiBacco v. Benedette*, 82 W. Va. 84, 95 S.E. 601 (1918). As with any similarly situated driver, Ms. Painter's claim of a right to

9

a blood test under W. Va. Code § 17C-5-9 fails if she did not offer evidence to support her claim. Accordingly, we hold that when a driver asserts that his or her right to a blood test requested pursuant to W. Va. Code § 17C-5-9 (1983) has been violated, the burden of proof is upon the driver to show he or she made the request in compliance with the conditions set forth in the statute for making that request. Applying this holding to the present case, we find that the burden of proof to establish that her right to a blood test was violated was upon Ms. Painter.

Ms. Painter purports that she made a request for a blood test to the investigating officer and to an unidentified person at Western Regional Jail. Ms. Painter states that W. Va. Code § 17C-5-9 does not direct to whom a request for a blood test may be made to invoke the right under that statute. She contends that she has satisfied the requirements of W. Va. Code § 17C-5-9 and exercised her right to a blood test by making a request for a blood test to both the investigating officer and to the unidentified person at Western Regional Jail.

We agree with Ms. Painter's position that W. Va. Code § 17C-5-9 does not explicitly state to whom a request for a blood test must be made. Thus, we find that there is uncertainty as to whom the request must be made. When there is uncertainty as to the meaning of a statute, the statute is ambiguous and must be evaluated to give effect to the intent of the Legislature. Syl. pt. 4, *Mace v. Mylan Pharm., Inc.*, 227 W. Va. 666, 714

10

S.E.2d 223 (2011) (""The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl Pt. 3, *Davis Mem'l Hosp. v. W. Va. State Tax Comm'r*, 222 W.Va. 677, 671 S.E.2d 682 (2008)."). "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949). We have held that "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

The first step when construing an ambiguous statute is to determine legislative intent. Syl. pt. 1, in part, *Ohio Cnty. Comm'n v. Manchin*, 171 W. Va. 552, 301 S.E.2d 183 (1983) ("[T]he initial step in such interpretive inquiry is to ascertain the legislative intent."). In determining the Legislature's intent, we are mindful that

> [a] statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

11

Syl. pt. 5, *State v. Snyder*, 64 W. Va. 659, 63 S.E. 385 (1908). Accordingly, one method for determining legislative intent is to compare the ambiguous statute to other portions of the West Virginia Code. Syllabus point 4 of *Community Antenna Service, Inc. v. Charter Communications VI, LLC*, 227 W. Va. 595, 712 S.E.2d 504 (2011), provides that "'[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Pursuant to syllabus point 6 of *Community Antenna Service, Inc.*, "[s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent." 227 W. Va. 595, 712 S.E.2d 504 (in part) (quoting syl. pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975)).

Here, we need look only so far as W. Va. Code § 17C-5-6 (1981),[8] which provides instruction on how blood tests requested pursuant to W. Va. Code § 17C-5-9 are to be administered and the use of the test results. These statutes relate to the same thing

---

[8] The 1981 version of this statute was in force at the time of Ms. Painter's arrest. In 2013, the Legislature amended W. Va. Code § 17C-5-6. Like the changes made to W. Va. Code § 17C-5-9, the changes made in 2013 to W. Va. Code § 17C-5-6 are not probative to the issues in this case.

and have a common purpose: providing for blood tests upon the request of an arrestee. Therefore, in accord with *Community Antenna Service, Inc.*, we will proceed by examining these statutes *in pari materia* to discern legislative intent with regard to whom a request for a blood test must be made.

W. Va. Code § 17C-5-6 states, in relevant part:

> Only a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his employment, acting at the request and direction of *the law-enforcement officer*, may withdraw blood for the purpose of determining the alcoholic content thereof. . . . The person tested may, at his own expense, have a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his employment, of his own choosing, administer a chemical test in addition to the test administered by *the law-enforcement officer*. Upon the request of the person who is tested, full information concerning the test taken at the direction of *the law-enforcement officer* shall be made available to him. . . .

(Emphasis added.) The clear language of W. Va. Code § 17C-5-6 provides that all initial blood tests must be made at the request and direction of "the law-enforcement officer." The definite article "the" particularizes the subject which it precedes: "law-enforcement officer." In other words, the statute uses the word "the" to refer to a specific law-enforcement officer. *See, e.g.*, *Clair v. Commonwealth*, No. 2011-SC-000774-MR, 2014 WL 4113014, at *17 (Ky. 2014) ("The use of the definite article, the word 'the,' signals a specific thing."); *Yellowbird v. N.D. Dep't of Transp.*, 833 N.W.2d 536, 539 (N.D. 2013) ("'[T]he' is [a]n article which particularizes the subject spoken of. In construing [a]

statute, definite article 'the' particularizes the subject which it precedes and is [a] word of limitation as opposed to indefinite or generalizing force [of] 'a' or 'an.'" (Internal quotation and citation omitted.)); *New Iberia Firefighters Ass'n, Local 775 v. City of New Iberia*, 140 So.3d 788, 792–93 (La. Ct. App. 2014) ("'The' is a definite article, which refers to a specific person, place, or thing; whereas 'a' or 'an' are indefinite articles, which refer to people, places, or things in a general or nonspecific manner."); *In re AJR*, 834 N.W.2d 904, 907 (Mich. Ct. App. 2013) ("[I]f the Legislature wants to refer to something particular, not general, it uses the word 'the,' rather than 'a' or 'an.'"); *cf. Maupin v. Sidiropolis*, 215 W. Va. 492, 497, 600 S.E.2d 204, 209 (2004) ("Typically, though, 'an' is construed as making general, rather than specific, references to its words of modification.").

We conclude that the Legislature intended that the investigating officer— the law-enforcement officer with personal knowledge regarding the circumstances of the arrest—is "the law-enforcement officer" described in W. Va. Code § 17C-5-6. Thus, because W. Va. Code § 17C-5-6 establishes that an investigating officer must request and direct any initial blood test to be performed by a doctor of medicine or osteopathy, registered nurse, or trained medical technician, we find that the Legislature intended that an arrestee's request for a blood test under W. Va. Code § 17C-5-9 be made to the

14

investigating officer. We now hold that a request for a blood test made pursuant to W. Va. Code § 17C-5-9 (1983) must be made to the investigating officer or officers.[9]

Applying this holding to the case at bar, we find that to have properly asserted her right to a blood test under W. Va. Code § 17C-5-9, Ms. Painter must have requested a blood test from Officer Garbin, the investigating officer. Ms. Painter's request for a blood test from an unidentified individual at Western Regional Jail cannot serve as a proper assertion of her rights under W. Va. Code § 17C-5-9. Thus, whether Ms. Painter requested a blood test from someone at Western Regional Jail is irrelevant in determining whether her right to a blood test was violated.

Upon our review of the April 27, 2012, administrative order, we find that the chief hearing examiner explicitly concluded that Ms. Painter requested a blood test; however, the order does not state when the request was made, how many times, or to whom. Additionally, the administrative order does not make an explicit finding as to whether Ms. Painter's right to a blood test, pursuant to W. Va. Code § 17C-5-9, was violated. The order does clearly conclude that Ms. Painter drove under the influence of

---

[9] An arrestee's request for a separate blood test (or for a separate breath or urine test) must be made to the investigating officer in a timely manner such that the officer may reasonably perform the blood test within the two hour timeframe set forth in W. Va. Code § 17C-5-9.

15

alcohol with a BAC of 0.15 percent or more, and that the Commissioner did not err by revoking her driver's license.

The circuit court, in its October 28, 2013, order, expanded on the administrative order, making explicit findings of fact above and beyond the findings made in the administrative order. Specifically, the circuit court found that Ms. Painter requested a blood test and that she requested a blood test twice—first from Officer Garbin and then from someone in Western Regional Jail.

Upon applying our standard of review, we conclude that the circuit court committed reversible error by reversing the administrative order on the grounds that Ms. Painter was wrongfully denied a blood test under W. Va. Code § 17C-5-9. As established *supra*, it was Ms. Painter's burden to prove that she requested a blood test from Officer Garbin, and although the administrative order does not make a specific finding as to whether Ms. Painter's request for a blood test complied with the requirements of W. Va. Code § 17C-5-9, the transcript of the administrative hearing shows Ms. Painter specifically testified that she did *not* ask Officer Garbin for a blood test. When questioned, "Did you tell the officer there himself?" she responded, "No, not this officer." Moreover, we find that Ms. Painter's telephone discussion with her daughter does not represent a request for a blood test made to the investigating officer, and, even if we were to assume that Officer Garbin was listening to some or all of Ms. Painter's

16

telephone conversation with her daughter, Office Garbin was under no obligation to inform Ms. Painter that she had a right to demand a blood test. *State v. York*, 175 W. Va. 740, 741, 338 S.E.2d 219, 221 (1985). ("Under [W. Va. Code § 17C-5-9 (1983)] law enforcement officers are under no duty to inform the defendant of his right to additional tests."). Therefore, Ms. Painter did not satisfy her burden of showing that she properly asserted her right to a blood test pursuant to W. Va. Code § 17C-5-9, and she cannot support her claim that her right to a blood test was violated. The circuit court's order, to the extent that it makes findings of facts and conclusions to the contrary, is in error.

Based upon the evidence presented to the OAH, we conclude that Ms. Painter's right to a blood test under W. Va. Code § 17C-5-9 was *not* violated. Because the circuit court abused its discretion by making factual findings that were not supported by the whole record, and because the circuit court relied on these unsupported factual findings to reverse the administrative order, the circuit court committed reversible error. Therefore, the administrative order revoking Ms. Painter's license must be reinstated.[10]

---

[10] The Commissioner presented a second assignment of error to this Court: "Inasmuch as there is no statutory remedy for not obtaining a blood test, the circuit court erred in finding that respondent's constitutional and statutory rights were violated." Having determined that this case must be reversed because the circuit court erroneously determination that Ms. Painter's rights under W. Va. Code § 17C-5-9 were violated, we need not address the second assignment of error.

17

## IV.  CONCLUSION

For the reasons set forth above, this Court reverses and remands the circuit court's order entered October 28, 2013, which reversed the April 27, 2012, order of the OAH, which affirmed the Commissioner's revocation of Ms. Painter's driver's license.

Reversed and remanded.

18