456 S.E.2d 451

**Leonard SNIFFIN, Petitioner Below, Appellee,**

v.

**Jane L. CLINE, Commissioner, Department of Motor Vehicles, Respondent Below, Appellant.**

**No. 22573.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 1995.

Decided Feb. 17, 1995.

---

Howard J. Blyler, Cowen, for appellee.

Paul E. Jordan, Sr. Asst. Atty. Gen., Charleston, for appellant.

CLECKLEY, Justice:

The respondent below and appellant, Jane L. Cline, Commissioner of the Department of Motor Vehicles (DMV), appeals the January 28, 1994, order of the Circuit Court of Braxton County which concluded that the petitioner below and appellee herein, Leonard Sniffin, was entitled to an administrative hearing because his driver's license was being revoked for a second offense of driving under the influence (DUI) under W.Va.Code, 17B–3–5 (1986),[1] as the result of an out-of-state conviction.

Upon receiving notice of Mr. Sniffin's convictions for DUI, the DMV revoked his driver's license for a period of ten years. After the DMV refused Mr. Sniffin's request for a hearing, Mr. Sniffin successfully petitioned the circuit court, which found that he was entitled to an administrative hearing. By order dated January 28, 1994, the circuit court required the DMV to provide an administrative hearing before the revocation became effective. The DMV appeals the circuit court's order contending that W.Va. Code, 17B–3–5, does not require a hearing and that the circuit court exceeded its authority. We agree with the DMV and find that W.Va.Code, 17B–3–5, does not require a hearing. Therefore, we reverse the circuit court.

I.

FACTS

On February 26, 1991, the DMV received documents relating to Mr. Sniffin's August 2,

1. W.Va.Code, 17B–3–5, provides, in pertinent part:

"The department shall forthwith revoke the license of any operator ... upon receiving a record of such operator's ... conviction of any of the following offenses, when such conviction has become final ...:

\* \* \* \* \* \*

"(6) Driving under the influence of alcohol ... outside the state of West Virginia which conviction is under a municipal ordinance or statute of the United States or any other state of an offense which has the same elements as an offense described in section two [§ 17C–5–2], article five, chapter seventeen-c of this code[.]"

1989, arrest and September 14, 1989, conviction for DUI in the State of Virginia. These records indicated that Mr. Sniffin's privilege to operate a motor vehicle in Virginia had been suspended for six months and he had been ordered to participate in an alcohol rehabilitation program. At the time of his arrest, Mr. Sniffin possessed a West Virginia driver's license and his car was registered in West Virginia.

In response to this information, by administrative order dated March 4, 1991, the DMV revoked the driver's license of Mr. Sniffin pursuant to W.Va.Code, 17B–3–5, for six months and thereafter until he had successfully completed a required safety and treatment program and paid a $15.00 reinstatement fee. He was eligible for reinstatement in ninety days upon completion of the program and payment of the reinstatement fee.

Subsequently, the DMV received notice from Virginia that the Mr. Sniffin again was arrested on January 6, 1990, and convicted on April 10, 1990, for driving under the influence of alcohol in the State of Virginia. Mr. Sniffin pleaded guilty to this second offense. After receiving notice of this second offense, the DMV ordered the revocation of Mr. Sniffin's driver's license for ten years with eligibility for reinstatement in five years upon successful completion of the safety and treatment program and payment of the $15.00 reinstatement fee. The DMV issued this second order on June 13, 1991.

On October 15, 1991, Mr. Sniffin wrote the DMV and requested a hearing on the June 13, 1991, revocation. He was informed that because his convictions occurred outside West Virginia, pursuant to W.Va.Code, 17B– 3–5, he was not entitled to an administrative hearing on the revocation. Mr. Sniffin was later arrested for driving on a revoked driver's license.

On June 18, 1992, Mr. Sniffin brought an action in the Circuit Court of Braxton County alleging that he was entitled to an administrative hearing on his out-of-state offenses pursuant to W.Va.Code, 17B–3–6 (1989).[2] After conducting a hearing on January 28, 1994, the circuit court found that Mr. Sniffin was entitled to an administrative hearing on his second revocation and ordered the DMV to provide such a hearing. The DMV now appeals the circuit court's order.

## II.

### REVOCATION OF LICENSE FOR AN OUT–OF–STATE DUI CONVICTION

The DMV asserts that under W.Va.Code, 17B–3–5(6),[3] a driver's license must be revoked "forthwith" upon receiving notice of a final out-of-state DUI conviction provided the offense contains the same elements as W.Va. Code, 17C–5–2 (1986).[4] The DMV further argues the revocation is mandatory and the statute does not provide for an administrative hearing. On the other hand, Mr. Sniffin contends a hearing is required pursuant to W.Va.Code, 17B–3–6, and W.Va.Code, 17C–5A–1, *et seq.*,[5] if requested, before his license can be revoked.

The primary issue in this appeal, as formulated by the parties, is whether Mr. Sniffin is entitled to an administrative hearing prior to the revocation of his driver's license.[6] In deciding whether the DMV's

---

**2.** W.Va.Code, 17B–3–6, was amended in 1993. However, even under the 1993 version, our analysis remains the same because neither version grants Mr. Sniffin a right to a hearing.

**3.** For the relevant text of W.Va.Code, 17B–3–5(6), see note 1, *supra.*

**4.** This section was amended in 1994. Mr. Sniffin did not assert in his petition to the circuit court that his conviction in Virginia would not have resulted in a conviction under W.Va.Code, 17C–5–2.

**5.** In his brief, Mr. Sniffin argues that "West Virginia Code 17B–5A, et seq. provides the sus-

pension periods for driving under the influence." There is no such section in the Code; however, W.Va.Code, 17C–5A–1, *et seq.*, seems to fit Mr. Sniffin's argument.

**6.** The proper resolution of this case depends upon the correct interpretation and recognition of the interrelationship of various statutes. The cardinal rule in the construction of a statute is to ascertain and give effect to the intentions of the Legislature. *State ex rel. Goff v. Merrifield,* 191 W.Va. 473, 446 S.E.2d 695 (1994); *Hechler v. McCuskey,* 179 W.Va. 129, 365 S.E.2d 793

position should be sustained, we apply the standards set out by the United States Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We first ask whether the Legislature has "directly spoken to the precise [legal] question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781, 81 L.Ed.2d at 702–03. "If the intention of the Legislature is clear, that is the end of the matter." *Id.* If it is not, we may not simply impose our own construction of the statute. "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the [DMV's] answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782, 81 L.Ed.2d at 703. *See Pauley v. BethEnergy Mines Inc.*, 501 U.S. 680, 696–98, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604, 623–25 (1991). In the present case, it is clear that the Legislature has not spoken to the precise question at issue. Therefore, we review the DMV's decision to determine whether its construction is one the Legislature would have sanctioned. *See United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560–61, 6 L.Ed.2d 908, 915 (1961).

### A.

#### *W.Va.Code, 17B–3–5, and W.Va.Code, 17B–3–6*

■ The DMV revoked Mr. Sniffin's license pursuant to W.Va.Code, 17B–3–5, which provides for the mandatory revocation of a driver's license under certain circumstances.[7] Because this section of the statute does not provide for an administrative hear-ing prior to revocation, we agree with the DMV and hold that neither W.Va.Code, 17B–3–5, nor W.Va.Code, 17B–3–6, grants a hearing under the circumstances of this case.

■ The circuit court's adjudicatory interpretation of these statutes is entitled to no special deference and is subject to our independent review. *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436 (1994). *See also Zapata Haynie Corp. v. Barnard*, 933 F.2d 256, 258 (4th Cir.1991). However, absent clear legislative intent to the contrary, we afford deference to a reasonable and permissible construction of the *statute* by the DMV because it has policymaking authority with regard to the statute.[8]

Here, the DMV's construction, as reflected in its brief submitted in this case, is reasonable, supported by the law, not contrary to legislative intent, and is consistent with this Court's prior decisions. We further find that the DMV's answer is a reasonable accommodation of potentially conflicting policies that were committed to the DMV by the statute. Because we find DMV's construction is one the Legislature would have sanctioned, we defer to that interpretation and, accordingly, reverse the circuit court.

■ In *Wells v. Roberts*, 167 W.Va. 580, 280 S.E.2d 266 (1981), this Court determined that W.Va.Code, 17B–3–5, and W.Va.Code, 17B–3–6, were two separate sections that did not control each other. In Syllabus Point 1, in part, of *Wells*, we stated:

> "*W.Va.Code*, 17B–3–5, provides for a mandatory revocation of an operator's license upon receipt of a record of conviction

---

(1987); *State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268 (1983). In the construction of a statute, the intentions of the Legislature are to be determined, not from "any single part, provision, section, sentence, phrase or word," but rather from a general consideration of the statute in its entirety. Syllabus Point 1, in part, *Mills v. VanKirk*, 192 W.Va. 695, 453 S.E.2d 678 (1994), *quoting* Syllabus Point 3, in part, *Pristavec v. Westfield*, 184 W.Va. 331, 400 S.E.2d 575 (1990). Accordingly, we will review the entire statutory scheme to ascertain the intentions of the Legislature.

**7.** For the relevant portion of W.Va.Code, 17B–3–5, see note 1, *supra*.

**8.** Consistently, this Court has held that interpretations of statutes by administrative bodies charged with enforcing such statutes are to be afforded great weight. *See* Syllabus Point 2, *W.Va.Dept. of Health v. Blankenship*, 189 W.Va. 342, 431 S.E.2d 681 (1993); *W.Va. Nonintoxicating Beer Commr. v. A & H Tavern*, 181 W.Va. 364, 382 S.E.2d 558 (1989); *Dillon v. Board of Educ.*, 171 W.Va. 631, 301 S.E.2d 588 (1983); *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Therefore, the DMV's construction of these statutes must be given substantial deference.

of a specified offense when that conviction has become final. That section does not provide for an administrative hearing either before or after the revocation, but, rather, for 'forthwith' revocation."

In recognizing the differences between these two Code sections, this Court noted that W.Va.Code, 17B–3–6, covers discretionary revocations when there has "not been a prior judicial determination that the licensee is guilty of a vehicular offense that would justify a finding that he is a present danger to the public using the roads". 167 W.Va. at 584, 280 S.E.2d at 269. On the other hand, W.Va.Code, 17B–3–5, provides for revocations "only after there has been a judicial determination of guilt as evidenced by a record of conviction". 167 W.Va. at 584, 280 S.E.2d at 269. Additionally, we stated in Syllabus Point 2 of *Wells, supra:*

> "Mandatory administrative revocation of an operator's license, without an administrative hearing, under *W.Va.Code,* 17B–3–5, where there has been a prior hearing and conviction on the underlying criminal charge, does not deny the person whose license is so revoked due process of law."

■ Considering the significant differences between W.Va.Code, 17B–3–5, and W.Va.Code, 17B–3–6, and our holding in *Wells v. Roberts, supra,* we expressly find that W.Va.Code, 17B–3–6, does not create a right to an administrative hearing under W.Va.Code, 17B–3–5. Thus, the circuit court was in error when it granted Mr. Sniffin an administrative hearing based on W.Va.Code, 17B–3–6.

### B.

#### *W.Va.Code, 17B–3–5, and W.Va.Code, 17C–5A–1, et seq.*

Alternatively, Mr. Sniffin argues that W.Va.Code, 17C–5A–1 and –2, support the circuit court's order requiring an administrative hearing prior to the revocation of his driver's license. This contention collapses in the wake of precedent and reasonable statutory construction. Generally, these statutory provisions provide only the administrative process and procedures for suspending and revoking a driver's license for DUI.

■ Although portions of W.Va.Code, 17C–5A–1 and –2, are relevant to our construction of W.Va.Code, 17B–3–5, they do not create a right of hearing for an individual whose license is revoked pursuant to W.Va. Code, 17B–3–5. As argued by Mr. Sniffin, W.Va.Code, 17C–5A–2(d), gives a right to a hearing if requested before a license suspension becomes final, but the scope and purpose of this hearing are limited to:

> "whether the person did drive a motor vehicle while under the influence of alcohol, controlled substances or drugs, or did drive a motor vehicle while having an alcohol concentration in his blood of ten hundredths of one percent or more, by weight, or did refuse to submit to the designated secondary chemical test." [9]

■ As we stated in *Wells* and reaffirm here, W.Va.Code, 17B–3–5, applies only to administrative revocations after a prior judicial determination of whether a person drove under the influence of drugs or alcohol. Unlike W.Va.Code, 17B–3–5, where there has not been a prior judicial determination, a hearing under W.Va.Code, 17C–5A–2 is designed solely to establish whether a person was driving under the influence of drugs or alcohol before revoking such person's driver's license. It is unclear what Mr. Sniffin believes he would accomplish through an administrative hearing considering the primary purpose of the hearing has already been answered and satisfied through his DUI convictions in Virginia. An administrative hearing in this State following a conviction in another state would serve no purpose. To resolve any future doubt, we now make explicit what the Legislature has implicitly provided: A prior criminal adjudication in another state establishing DUI satisfies the same function of the administrative hearing described in W.Va.Code, 17C–5A–2. *See Wells v. Roberts, supra* (holding that a state can

---

9. W.Va.Code, 17C–5A–2(d), was amended in 1994. The amendment did not change the principal question of hearings under W.Va.Code, 17C–5A–2, and only added a section allowing the DMV to propose certain legislative rules.

use a prior criminal adjudication as the basis for an administrative revocation).

It is clear that the constitutional guarantee of due process is satisfied by West Virginia's mandatory license revocation procedures. A seminal case on due process rights in the context of a driver's license revocation is *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). In *Bell*, the Supreme Court held that a person could not be deprived of his driver's license without being afforded a modicum of procedural due process.[10] The Supreme Court of Arizona subsequently explained that "the purpose of the hearing mandated by *Bell v. Burson* ... is to allow a motorist an opportunity to demonstrate that he is free from fault and, therefore, his license should not be revoked." *State v. Jennings*, 150 Ariz. 90, 93, 722 P.2d 258, 261 (1986). In *Jennings*, the Arizona Court rejected a due process challenge to a mandatory driver's license revocation based on procedures similar to that presented in the instant case. Holding that the purpose of a *Bell v. Burson* hearing in such a case was satisfied by the statutory procedure, the Arizona court emphasized: "Revocation, pursuant to this section, occurs only after a conviction has become final for one of the enumerated offenses. The driver has already had the opportunity for a full trial before the mandatory provision of A.R.S. § 28-445 applies."[11] 150 Ariz. at 93, 722 P.2d at 261.

■ Once the major purpose of the administrative hearing is satisfied, the only justification for having an additional hearing would be to permit collateral attacks on the validity of the out-of-state conviction. However, in the Syllabus, in part, of *Stalnaker v. Roberts*, 168 W.Va. 593, 287 S.E.2d 166 (1982), we established that collaterally attacking a conviction is an impermissible objective of administrative actions:

> "The proper forum for attacking the constitutional validity of a prior traffic offense conviction when that offense is the foundation for adverse administrative action by the commissioner of motor vehicles is the county in which such a conviction was initially rendered if the conviction is a West Virginia conviction, or the state courts of the state in which the conviction was initially rendered if it is an out-of-state conviction." (Citations omitted).[12]

10. In *Bell*, Georgia's Motor Vehicle Safety Responsibility Act provided that the motor vehicle registration and driver's license of an uninsured motorist involved in an accident shall be suspended unless he or she posts security for the amount of damages claimed by an aggrieved party and excluded any consideration of fault or responsibility for the accident at a presuspension hearing. The Supreme Court held this statutory suspension procedure denied the licensee due process because he was not given an opportunity to show that there was no reasonable possibility of a judgment being rendered against him. 402 U.S. at 540, 91 S.Ct. at 1590, 29 L.Ed.2d at 95. The Supreme Court held "that procedural due process will be satisfied by an inquiry limited to the determination whether there is a reasonable possibility of judgments in the amounts claimed being rendered against the licensee." 402 U.S. at 540, 91 S.Ct. at 1590, 29 L.Ed.2d at 95.

11. The Arizona court also relied on relevant language in the Supreme Court opinion in *Dixon v. Love*, 431 U.S. 105, 113–14, 97 S.Ct. 1723, 1728, 52 L.Ed.2d 172, 181 (1977):

> " 'In this case appellee had the opportunity for a full judicial hearing in connection with each of the traffic convictions on which the Secretary's decision was based. Appellee has not challenged the validity of those convictions or the adequacy of his procedural rights at the time they were determined. Since appellee does not dispute the factual basis for the Secretary's decision, he is really asserting the right to appear in person only to argue that the Secretary should show leniency and depart from his own regulations. Such an appearance might make the licensee feel that he has received more personal attention, but it would not serve to protect any substantive rights.' " *State v. Jennings*, 150 Ariz. at 93, 722 P.2d at 261, *quoting Dixon v. Love, supra.*

12. In *Custis v. United States*, —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), the Supreme Court held that it is constitutionally permissible to bar virtually all collateral attacks upon prior state convictions being used for sentence enhancement in a federal trial. While a defendant may raise the "unique constitutional defect" of "failure to appoint counsel for an indigent defendant," challenge of other constitutional defects, such as an invalid guilty plea, may constitutionally be barred entirely in this setting. —— U.S. at ——, 114 S.Ct. at 1738, 128 L.Ed.2d at 528. "Ease of administration" and the "interest in promoting the finality of judgments" (said to "bear extra weight in cases in which the prior convictions, such as [the] one challenged by Custis, are based on guilty pleas") were the consider-

Finally, Mr. Sniffin points to the fact that W.Va.Code, 17B–3–5, does not provide a specific revocation period and that Virginia treated both his DUI convictions as first offenses. The relevance of this information is not discussed by the parties. Presumably, Mr. Sniffin believes that this additional information bolsters his argument that he is entitled to a hearing because there is no definite period of revocation provided under W.Va. Code, 17B–3–5, and West Virginia treated him differently than he would have been treated in Virginia. This argument is also unpersuasive. We believe it is irrelevant that W.Va.Code, 17B–3–5 itself does not provide for a specific length of time for revocation because this section must be read in concert with other Code provisions.

Article III of the Drivers' License Compact indicates that the "licensing authority" of one state will report convictions of the licensee to the "licensing authority" of the home state of a licensee. W.Va.Code, 17B–1A–1 (1972).[13] Additionally, Article IV(a)(2) of W.Va.Code, 17B–1A–1 (1972), provides that the home state will treat any conviction for driving a motor vehicle while under the influence of alcohol or drugs occurring in another state as if it had occurred in the home state.[14] On two separate occasions, the DMV revoked Mr. Sniffin's driver's license under W.Va.Code, 17B–3–5, after it received conclusive proof that Mr. Sniffin had been convicted for DUI in a foreign state while holding a West Virginia driver's license. As required by W.Va.Code, 17B–1A–1, a licensee convicted for an out-of-state driving infraction will be treated as if the incident occurred in West Virginia. W.Va.Code, 17C–5A–2(i), requires the DMV to revoke "the person's license for a period of ten years" if that person's license previously had been revoked.[15] Thus, the DMV appropriately revoked Mr. Sniffin's license for ten years. The sentence or sanction imposed upon Mr. Sniffin by Virginia is not controlling, and it is equally irrelevant that Virginia treated both Mr. Sniffin's DUI convictions as first offenses. If Mr. Sniffin had been driving under the influence in West Virginia, he would have been convicted of a second offense and, ultimately, his driver's license would have been revoked for a second time under W.Va.

ations relied upon by the *Custis* Court in support of that conclusion. —— U.S. at ——, 114 S.Ct. at 1738–39, 128 L.Ed.2d at 528–29. *Custis* was cited and relied upon by this Court in *State v. Day*, 191 W.Va. 641, 447 S.E.2d 576 (1994).

13. Article III of W.Va.Code, 17B–1A–1, reads as follows:

"**Article III. Reports of Conviction.**

"The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted; describe the violation specifying the section of the statute, code or ordinance violated; identify the court in which action was taken; indicate whether a plea of guilty or not guilty was entered, or the conviction was a result of the forfeiture of bail, bond or other security; and shall include any special findings made in connection therewith."

14. W.Va.Code, 17B–1A–1 provides, in part:

"**Article IV. Effect of Conviction.**

"(a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to article III of this compact, as it would if such conduct had occurred in the home state, in the case of convictions for:

\* \* \* \* \* \*

"(2) Driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug, or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle."

15. The pertinent portions of W.Va.Code, 17C–5A–2(i), reads as follows:

"If the commissioner finds by a preponderance of the evidence that the person did drive a motor vehicle while under the influence of alcohol ..., the commissioner shall revoke the person's license for a period of six months: Provided, That if the commissioner has previously suspended or revoked the person's license under the provisions of this section or section one [§ 17C–5A–1] of this article, the period of revocation shall be ten years: Provided, however, That if the commissioner has previously suspended or revoked the person's license more than once under the provisions of this section or section one [§ 17C–5A–1] of this article, the period of revocation shall be for the life of such person."

W.Va.Code, 17C–5A–2, was amended in 1992 and 1994. W.Va.Code, 17C–5A–2(i), remained substantially the same after the two amendments.

Code, 17C–5A–2(i).[16] Engaging in this analysis, we do not find W.Va.Code, 17B–3–5, to be flawed because it does not provide a revocation period. Clearly, the Legislature intended the Drivers' License Compact and W.Va.Code, 17B–3–5, to work with other statutes concerning driving offenses.

In conclusion, after reviewing *in pari materia*, W.Va.Code, 17C–5A–1, *et seq.*, and W.Va.Code, 17B–3–5, we find W.Va.Code, 17B–3–5, does not require an administrative hearing prior to revoking a driver's license if there has been a prior adjudication establishing that the licensee is guilty of driving under the influence of alcohol or drugs. The circuit court's order granting a hearing under W.Va.Code, 17B–3–5, through either W.Va.Code, 17C–5A–1, or W.Va.Code, 17B–3–6, constitutes an abuse of the circuit court's authority and requires reversal. For the foregoing reasons, the order of the Circuit Court of Braxton County is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.

**16.** We recently rejected a similar argument in *Chapman v. W.Va. Department of Motor Vehicles,* 188 W.Va. 216, 220–21, 423 S.E.2d 619, 623–24 (1992). In *Chapman,* the driver contended that a ten-year suspension was unwarranted because a violation of W.Va.Code, 17C–5–2 is not covered under the enhancement provisions of W.Va.Code, 17C–5–7. Pointing to the specific language of W.Va.Code, 17C–5–7, this Court held that under the very terms of the statute the ten year enhancement provision applies to anyone who previously has been convicted of DUI under W.Va. Code, 17C–5–2. We reach the same conclusion in this case.