455 S.E.2d 769

**Mark A. MILLER, Appellee,**

**v.**

**Jane L. CLINE, Commissioner, Department of Motor Vehicles, Appellant.**

No. 21984.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 1995.

Filed Feb. 17, 1995.

Mark A. Miller, pro se.

Paul E. Jordan, Sr. Asst. Atty. Gen., Charleston, for appellant.

CLECKLEY, Justice:

The appellant, Jane L. Cline, Commissioner of the Department of Motor Vehicles (DMV), appeals the May 27, 1993, order of the Circuit Court of Mineral County which concluded, *inter alia,* that the appellee, Mark A. Miller,[1] was not entitled to an administrative hearing because his driver's license was being revoked for a second offense of driving under the influence (DUI) pursuant to W.Va. Code, 17B–3–5 (1986),[2] as the result of an out-of-state conviction. The circuit court's order also provided that Mr. Miller was not denied due process by the DMV's delay in initiating the action against him and that the "minimum" five-year revocation of Mr. Miller's license should be calculated from the date of his first offense, May 12, 1986, which made him eligible to have his license reinstated on May 12, 1991. The circuit court then ordered the DMV to reinstate Mr. Miller's license upon proof that he completed counseling and a safety and treatment program.[3] In addition, the circuit court stated Mr. Miller could continue to drive pending an appeal.

On appeal, the DMV argues the circuit court erred in modifying the DMV's revocation order and in calculating the date of Mr. Miller's eligibility to have his license reinstated.

## I.

### FACTS

According to DMV records, Mr. Miller was convicted of his first offense of DUI on May

---

1. Mr. Miller was represented by counsel before the circuit court. On appeal, Mr. Miller is *pro se* and did not file a brief or respond to the arguments of the DMV.

2. W.Va.Code, 17B–3–5, provides, in pertinent part:

    "The department shall forthwith revoke the license of any operator ... upon receiving a record of such operator's ... conviction of any of the following offenses, when such conviction has become final: ...

    \* \* \* \* \* \*

    "(6) Driving under the influence of alcohol ... outside the state of West Virginia which conviction is under a municipal ordinance or statute of the United States or any other state of an offense which has the same elements as an offense described in section two [§ 17C–5–2], article five, chapter seventeen-c of this code[.]"

3. See W.Va.Code, 17C–5A–3 (1994), for establishment of safety and treatment programs.

13, 1986.[4]  As a result of this conviction, Mr. Miller's license was revoked.  Subsequently, by letter dated March 20, 1987, Mr. Miller was notified that his license was reinstated.  On November 17, 1990, Mr. Miller was arrested in Maryland for DUI.  Mr. Miller had a trial date on June 11, 1991, and, thereafter, was convicted of DUI in Maryland.  This information was forwarded to the DMV in West Virginia.

By letter dated March 17, 1993, the DMV informed Mr. Miller that his license was being revoked for a period of ten years with eligibility for reinstatement in five years, to continue thereafter, until he completed a safety and treatment program.  On March 29, 1993, by counsel, Mr. Miller requested an administrative hearing.  This request was denied by a letter dated April 1, 1993.  In denying the request, the DMV said there was no provision for an administrative hearing under W.Va.Code, 17B–3–5, for a mandatory revocation as the result of a conviction in another state.

On April 15, 1993, Mr. Miller's counsel filed a "PETITION FOR APPEAL OF AD-MINISTRATIVE HEARING OR ALTER-NATIVELY—PETITION FOR WRIT OF MANDAMUS" with the circuit court.  In the petition, Mr. Miller claimed the DMV should be estopped from revoking his license due to its delay in taking any action against him in West Virginia for his Maryland conviction.  In addition, Mr. Miller argued the DMV's denial of his request for a hearing violated his constitutional right to due process.  Mr. Miller stated he already completed his probation and a DUI program in Maryland, and he was permitted to drive again in Maryland.  He also asserted he believed the matter was concluded and, based on this belief, obtained employment that requires him to drive on a daily basis.

In his petition, Mr. Miller requested the circuit court to issue a stay of the revocation until a hearing could be held and, ultimately, to order the revocation be rescinded.  In the alternative, Mr. Miller asked the circuit court to order the DMV to grant him an administrative hearing to permit a hearing examiner to make evidentiary rulings, findings of fact, and conclusions of law for the Commissioner to consider.  If the circuit court declined to consider Mr. Miller's petition as an appeal, he requested it be deemed a writ of mandamus to compel the Commissioner to give him an administrative hearing.  Finally, Mr. Miller asked that if the circuit court would not consider it as a writ of mandamus, it be deemed a writ of prohibition against the DMV from taking action against him.  On May 7, 1993, a hearing was held before the circuit court.  Thereafter, the circuit court entered its May 27, 1993, order to which the DMV appeals.

## II.

### REVOCATION OF LICENSE FOR AN OUT–OF–STATE DUI CONVICTION

■  The DMV argues that under Article IV(a)(2) of the Driver License Compact, W.Va.Code, 17B–1A–1, the DMV is authorized to revoke Mr. Miller's license for his DUI conviction in Maryland.  Article IV(a)(2), provides, in relevant part:

"(a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to article III of this compact, as it would if such conduct had occurred in the home state, in the case of convictions for:

\*  \*  \*  \*  \*  \*

"(2) Driving a motor vehicle while under the influence of intoxicating liquor[.]"[5]

4.  Although the circuit court ran Mr. Miller's revocation from May 12, 1986, both the report by the arresting officer and an official notice from the DMV, which were included in the record to this Court, state the conviction was on May 13, 1986.

5.  See also W.Va.Code, 17B–3–3 (1951), which more generally grants the DMV the authority to revoke a West Virginia driver's license upon a conviction in another state.  W.Va.Code, 17B–3–3, specifically states:

"The department is authorized to suspend or revoke the license of any resident of this State or the privilege of a nonresident to drive a motor vehicle in this State upon receiving notice of the conviction of such person in another state of an offense therein which, if committed

In addition, the DMV states that under W.Va.Code, 17B–3–5(6),[6] the Commissioner of the DMV must revoke a driver's license "forthwith" upon receiving a record of a final conviction of driving under the influence outside West Virginia provided the offense contains the same elements as W.Va.Code, 17C–5–2.[7] The DMV asserts the revocation is mandatory and the statute does not provide for an administrative hearing.

We recently addressed the right to an administrative hearing under W.Va.Code, 17B–3–5, in *Sniffin v. Cline*, 193 W.Va. 370, 456 S.E.2d 451 (1995), where we reaffirmed the validity of *Wells v. Roberts*, 167 W.Va. 580, 280 S.E.2d 266 (1981).[8] In Syllabus Point 1, in part, and Syllabus Point 2 of *Wells*, we stated:

"1. *W.Va.Code*, 17B–3–5, provides for a mandatory revocation of an operator's license upon receipt of a record of conviction of a specified offense when that conviction has become final. That section does not provide for an administrative hearing either before or after the revocation, but, rather, for 'forthwith' revocation....

"2. Mandatory administrative revocation of an operator's license, without an administrative hearing, under *W.Va.Code*, 17B–3–5, where there has been a prior hearing and conviction on the underlying criminal charge, does not deny the person whose license is so revoked due process of law."

In making this determination, we reasoned that a license is revoked under W.Va.Code, 17B–3–5, only where there is "a judicial determination of guilt as evidenced by a record of conviction." 167 W.Va. at 584, 280 S.E.2d at 269. Therefore, we concluded it is unnecessary to conduct an administrative hearing to protect an individual from mistaken or arbitrary action by the DMV.

■ As we further said in *Wells*, "[a] state may depend upon prior due process criminal trials as the basis for revocation of an operator's license without the necessity of an administrative due process hearing." 167 W.Va. at 584, 280 S.E.2d at 269. (Citations omitted).[9] In the present case, Mr. Miller was convicted of DUI in Maryland. As a result, he had no due process right to an administrative hearing when the DMV revoked his license pursuant to W.Va.Code, 17B–3–5(6). Therefore, we affirm the order of the circuit court with regard to its finding that Mr. Miller does not have a right to an administrative hearing under W.Va.Code, 17B–3–5.

■ The DMV also disputes the circuit court's characterization of Mr. Miller's revo-

in this State, would be a ground for the suspension or revocation of the license of an operator or chauffeur."

**6.** For the relevant text of W.Va.Code, 17B–3–5(6), see note 2, *supra*.

**7.** Mr. Miller did not assert in his petition to the circuit court that his conviction in Maryland would not have resulted in a conviction under W.Va.Code, 17C–5–2.

**8.** W.Va.Code, 17B–3–5, has been amended three times since the original version in 1951 relied upon in *Wells*. The relevant section in the 1951 version with regard to DUI was contained in W.Va.Code, 17B–3–5(2). In 1981, the relevant language in subdivision (2) was deleted from the statute. The statute was amended again in 1983, and language generally similar to the 1951 version of subdivision (2) was added and designated as subdivision (6). Unlike the 1951 version, subdivision (6) in the 1983 version specifically references DUI convictions "outside the State of West Virginia[.]" Additional amendments to the stat-

ute were made in 1986, but they are not relevant to this case.

**9.** As we recently stated in note 12 of *Sniffin v. Cline*, 193 W.Va. at 370, 456 S.E.2d at 451: "In *Custis v. United States*, —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), the Supreme Court held that it is constitutionally permissible to bar virtually all collateral attacks upon prior state convictions being used for sentence enhancement in a federal trial. While a defendant may raise the 'unique constitutional defect' of 'failure to appoint counsel for an indigent defendant,' challenge of other constitutional defects, such as an invalid guilty plea, may constitutionally be barred entirely in this setting. —— U.S. at ——, 114 S.Ct. at 1738, 128 L.Ed.2d at 528. 'Ease of administration' and the 'interest in promoting the finality of judgments' (said to 'bear extra weight in cases in which the prior convictions, such as [the] one challenged by Custis, are based on guilty pleas') were the considerations relied upon by the *Custis* Court in support of that conclusion. —— U.S. at ——, 114 S.Ct. at 1738–39, 128 L.Ed.2d at 528–29. *Custis* was cited and relied upon by this Court in *State v. Day*, 191 W.Va. 641, 447 S.E.2d 576 (1994)."

cation as a "minimum five (5) year suspension[.]" The DMV contends it is clear under W.Va.Code, 17C–5A–3(b)(2)(B) (1986), that Mr. Miller's revocation is not subject to a "minimum" number of years, but instead Mr. Miller is *eligible* for reinstatement upon the completion of certain requirements set forth in the statute. W.Va.Code, 17C–5A–3(b)(2)(B), provides:

> "When the period of revocation is for a period of years, the license to operate a motor vehicle in this state. shall not be reissued until (i) *at least one half of such time period has elapsed from the date of the initial revocation during which time the revocation was actually in effect,* (ii) the offender has successfully completed the [safety and treatment] program, (iii) all costs of the program and administration have been paid, and (iv) all costs assessed as a result of a revocation hearing have been paid." (Emphasis added).[10]

At the time of this appeal, the DMV acknowledges that Mr. Miller had met all the requirements of W.Va.Code, 17C–5A–3(b)(2)(B), except for subdivision (i), which the DMV contends was inaccurately calculated by the circuit court. Therefore, this Court only will review the manner in which the circuit court calculated the time period of Mr. Miller's revocation.

In concluding Mr. Miller was eligible to have his license reinstated, the circuit court used the date of Mr. Miller's first DUI conviction in 1986 to determine that at least one half of the mandatory ten-year revocation of his license for his second DUI conviction in 1991 had elapsed. We find the manner in which the circuit court made this calculation creates an absurd result. As indicated by

the DMV, if Mr. Miller's revocation is calculated from the date of his first offense, one half of his ten-year revocation had expired nearly one month prior to his second conviction.

After reviewing W.Va.Code, 17C–5A–3(b)(2)(B), we find it obvious that the legislature did not intend the result reached by the circuit court. The statute clearly states that when an individual's license is revoked for a period of years "at least one half of such time period" must elapse "from the date of the initial revocation during which time the revocation was actually in effect" before a license may be reissued. It is axiomatic that the revocation could not be "in effect" until the license is revoked for the offense which is currently sought to be enforced. Likewise, it is clear that the revocation must be "in effect," and, if a revocation is suspended for a period of time and an individual retains his or her right to drive, the period of time the individual was permitted to drive may not be credited towards the total amount of time that must elapse for the individual to become eligible to have his or her license reinstated.

Applying this criteria to the present case, the DMV agrees it should give Mr. Miller credit from the time he received notice that his license was revoked, March 17, 1993, to the date of the circuit court's order on May 27, 1993. Therefore, this period of time may be deducted from the total amount of time remaining for Mr. Miller to become eligible to have his license reinstated.[11]

### III.

### CONCLUSION

For the foregoing reasons, we find Mr. Miller was not denied due process by the

---

**10.** The 1994 version of W.Va.Code, 17C–5A–3(b)(2)(B), is virtually identical to the 1986 version.

**11.** In the circuit court, Mr. Miller contended that his rights were violated with regard to the delay of time between his Maryland conviction and the date upon which he received notice of his revocation in West Virginia. As mentioned in note 1, *supra,* Mr. Miller failed to file a brief; and, therefore, we are not able to fully address the issue. In the criminal context, however, the prevailing view is that in the absence of a specific statutory prohibition, delay in sentencing or its execution does not violate a defendant's due pro-

cess rights unless the defendant can show the delay was "purposeful or oppressive." *See Pollard v. United States,* 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393, 399 (1957) (no violation of speedy sentencing provision of Rule 32(a)(1) of the Federal Rules of Criminal Procedure where delay was not "purposeful or oppressive," but accidental and promptly remedied when discovered); *State v. Ward,* 185 W.Va. 361, 407 S.E.2d 365 (1991) (defendant failed to show that delay was by design). In the present case, we find no evidence of design or even prejudice caused by the delay.

DMV's refusal to grant him an administrative hearing when revoking his license for his out-of-state DUI conviction. However, we reverse the final order of the Circuit Court of Mineral County with regard to its calculation of the date when Mr. Miller became eligible to have his license reinstated. Therefore, we remand this case with directions to enter an order consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded with directions.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.